UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

YUKOS CAPITAL S.A.R.L.                         :
                                                :
                        Petitioner,             :           10 Civ. 6147 (PAC)
                                                :
        -against-                               :
                                                :           OPINION & ORDER
OAO SAMARANEFTEGAZ,                              :
                                                :
                        Respondent.             :
------------------------------------------------------------X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____              │
│ DATE FILED: July 24, 2012            │
└─────────────────────────────────────┘
```

HONORABLE PAUL A. CROTTY, United States District Judge:

On July 9, 2010, Yukos Capital S.A.R.L. ("Yukos Capital") instituted this action against

OAO Samaraneftegaz ("Samaraneftegaz") to enforce an arbitration award issued by the

International Court of Arbitration of the International Chamber of Commerce ("ICC") in New

York. On January 20, 2012, Samaraneftegaz filed a motion for summary judgment, arguing that

the Court lacked personal jurisdiction over it.[1] On February 17, 2012, Yukos Capital filed a

cross-motion for summary judgment, arguing that the Court had personal jurisdiction over

Samaraneftegaz. Each party also moved to remove certain confidentiality designations imposed

by the opposing party.

For the reasons that follow, the Court finds that it has jurisdiction over Samaraneftegaz.

Accordingly, the Court DENIES Samraneftegaz's motion for summary judgment; and GRANTS

Yukos Capital's motion for summary judgment. The Court GRANTS Samaraneftegaz's motion

---

[1] Prior to filing a motion for summary judgment, Samaraneftegaz had moved to dismiss the case on the basis of *forum non conveniens*, or in the alternative, to stay the case pending resolution of a parallel Russian enforcement action. On January 7, 2011, the Court granted Samaraneftegaz's motion to stay (Dkt. No. 31); and on February 16, 2011, denied Yukos Capital's motion for reconsideration (Dkt. No. 45). On May 13, 2011, after the Russian enforcement action concluded, the Court lifted the stay; denied Samaraneftegaz's motion to dismiss on *forum non conveniens*; held that it would consider the issue of the Addenda's validity first, before deciding whether to affirm the arbitration award; and ordered the parties to move forward with discovery "solely on the issue of personal jurisdiction—specifically, the validity of the Addenda." (Dkt. No. 50.)

to remove confidentiality designations; and DENIES Yukos Capital's motion to remove confidentiality designations.

## BACKGROUND

### I. The Parties

Samaraneftegaz produces crude oil in the Samara Region of the Russian Federation. (Samaraneftegaz 56.1 ¶ 1.)  From 2001 through May 2007, Samaraneftegaz was a wholly owned subsidiary of Yukos Oil Company ("Yukos Oil").  (Id. ¶ 3.)  From 1998 through June 2, 2006, Samaraneftegaz's management company was Yukos EP, which was indirectly wholly-owned by Yukos Oil.  (Id. ¶¶ 5, 6.)  During the relevant period, Victor Grekhov ("Grekhov") was President of both Samaraneftegaz and Yukos EP.  (Id. ¶ 43)  Samaraneftegaz is now a subsidiary of OJSC Oil Company Rosneft ("Rosneft"), which is controlled by the Russian state.

Yukos Capital is a Luxembourg-based company that is a wholly-owned subsidiary of Yukos Oil.  (Samaraneftegaz 56.1 ¶ 7.)

### II. The Loan Agreements and Addenda

In June 2004, Yukos Capital and Samaraneftegaz entered into two identical loan agreements (the "Loan Agreements"), under which Samaraneftegaz borrowed a total of RUR 2,415,890,000.  (Samaraneftegaz 56.1 ¶ 13.)  The Loan Agreements were executed in both English and Russian, without specification as to which version would prevail in the event of a conflict.  (Id. ¶ 16.)  The Loan Agreements called for arbitration of all disputes before the International Commercial Arbitration Court at the Chamber of Trade and Industry of the Russian Federation, under Russian law.  (Id. ¶ 17.)

In April 2005, Yukos Capital informed Yukos Oil that Samaraneftegaz had not made required payments under the Loan Agreements and, therefore, Yukos Capital was entitled to

demand early repayment of the Loans.  (Id. ¶ 21.)  Yukos Capital did not, however, send Samaraneftegaz a notice of default at that time.

At approximately this time, Yukos Oil's Management Committee determined that the dispute resolution and choice of law provisions in the parties' Loan Agreements (and other subsidiaries' agreements) should be amended to provide for arbitration in New York, under New York law.  Yukos Oil felt that Russian courts were active participants in the state-organized attack against Yukos Oil and would not issue fair, balanced, unbiased opinions.  (Yukos Capital 56.1 ¶ 4.)  At Yukos Oil's June 6, 2005 Management Committee meeting, "[t]he possibility of amending the original agreements was discussed.  It was noted that Tomsknef tegaz and Samaraneftegaz are both opposed to the amendments.  Samaraneftegaz will however be willing to amend the agreement, Tomsknetegaz will not."  (Samaraneftegaz 56.1 ¶ 27.)  "Sometime in the middle of th[at] summer," Grekhov asked Mr. Mkhitaryan, head legal counsel of Yukos RM (a manager of Yukos Oil), to prepare a power of attorney to issue to David Godfrey ("Godfrey"), Vice President of Yukos Oil in charge of legal affairs.  (Yukos Capital 56.1 ¶ 9.)[2]  There is no record of Grekhov having signed the power of attorney at this time.

By September 30, 2005, amendments to the Loan Agreements providing for arbitration in New York, under New York law, had been prepared (the "Addenda"), and Godfrey emailed Steven Theede, Chief Executive Officer of Yukos Oil, and others, requesting "support in requiring Mr. Grekhov to sign; he initially expressed some reservation."  (Samaraneftegaz 56.1 ¶¶ 12, 37; Toweill Decl. Ex. GG.)   Godfrey noted that "[a]nother option would be to have [Grekhov] give power of attorney to someone (i.e. not in Russia) to sign."  (Toweill Decl. Ex.

---

[2]  Samaraneftegaz argues that this statement is hearsay, and therefore should not be considered.  Grekhov's statements, however, are statements of a party opponent made in a representative capacity, and thus are not hearsay under Fed. R. Evid. 801(d)(2).

GG.)  Theede thereafter sent Grekhov a letter, requesting that he sign the Addenda.  (Coyle Decl.

Ex. 19.)

On October 26, 2005, Grekhov attended a meeting of Yukos Oil's Management

Committee.  (Toweill Decl. Ex. V.)  The minutes from this meeting reflect as follows:

> D.Godfrey explained to the Board that this concerns the inter-company
> loans between Yukos Capital in Belgium and abroad.  The form was
> drafted before any trouble had been anticipated, and it contains two
> provisions: the choice of law (Russian law was specified) and the location
> of the resolution (arbitration in Moscow was specified).  It was reported
> that we are preparing action against Yuganskneftegaz in Moscow under
> the terms of this loan contract for failure to take it to Yukos Capital.  It is
> unlikely that we will have a favorable result, but we do have an
> opportunity with the other companies still under our control (Yukos,
> Tomskneft, Samaraneftegaz).  The proposal is to change the applicable
> law to US/UK law and change the resolution to arbitration abroad.
> S.Theede has already signed for this on behalf of Yukos, and a signatory is
> needed for the other two.  V. Grekhov has been proposed but said he
> would need to study the documents for criminal risks and if there are none
> he would be happy to sign.

(Toweill Decl. Ex. V.)

In or around November 2005, Grekhov asked Mkhitaryan to print the power of attorney

that Mkhitaryan's legal department had previously prepared.  (Yukos Capital 56.1 ¶ 11.)

Grekhov signed the power of attorney which explicitly authorized Godfrey to "Conclude

(amend, supplement) on behalf of the Corporation agreements (arrangements, contracts) and to

undertake all and any actions and formalities pertinent to the execution of such agreements

(arrangements, contracts), including signature of all and any collateral documents drawn up in

the process of the execution of such agreements (arrangements, contracts)."  (Toweill Ex. LL;

see also Samaraneftegaz 56.1 ¶ 54)  While Grekhov signed the power of attorney after October

26, 2005, the document bears the date July 26, 2005.  (Samaraneftegaz 56.1 ¶¶ 53, 54.)

After Grekhov signed the power of attorney, Godfrey signed the Addenda on behalf of Samaraneftegaz.  (Samaraneftegaz 56.1 ¶ 55.)  Yukos Capital's sole manager, TMF Corporate Services S.A. ("TMF"), signed the Addenda for Yukos Capital and applied its own seal.  (Samaraneftegaz 56.1 ¶¶ 45-46, 66.)  An operations manager at Yukos EP applied Samaraneftegaz's seal to the Addenda.  (Samaraneftegaz 56.1 ¶ 71; Yukos Capital 56.1 ¶ 18.)

On December 1, 2005, after the Addenda were signed, Yukos Capital sent letters of default to Samaraneftegaz.  (Samaraneftegaz 56.1 ¶ 73.)  On December 2, 2005, Samaraneftegaz received the signed Addenda from Yukos EP.  (Samaraneftegaz 56.1 ¶ 74.)  After seeing the final Addenda, Grekhov told Mkhitaryan that he was very upset because his name appeared on the Addenda (albeit under the issuer, not on the signatory line).  (Coyle Decl. Ex. 2 Tr. 124:12-128:11 (Mkhitaryan testimony).)   On December 16, 2005, Grekhov sent a letter to Yukos Capital stating that the Addenda were void.  (Samaraneftegaz 56.1 ¶ 76.)

To date, Samaraneftegaz has not paid back the loans to Yukos.

### III.  The Arbitration & Current Action

On January 12, 2006, Yukos Capital submitted a request for arbitration in New York.  (Samaraneftegaz 56.1 ¶ 78.)  Samaraneftegaz claimed that the ICC did not have jurisdiction over it, and refused to participate in the proceedings.  (Id. ¶ 83.)  After an evidentiary hearing, the New York tribunal awarded Yukos Capital approximately RUR 3.08 billion in principle and interest.  Yukos Capital instituted this action to enforce the arbitration award.

### DISCUSSION

Samaraneftegaz argues that the Addenda are invalid for four separate reasons: (1) the power of attorney is void because it bears the wrong date, and thus Godfrey did not have the authority to sign the Addenda; (2) even if Godfrey had such authority, signing the Addenda

constituted an abuse of right; (3) Godfrey breached his fiduciary duty by signing the Addenda; and (4) the Addenda's execution failed to comply with the terms of the Loan Agreements.

Yukos Capital rejects each of Samaraneftegaz's arguments, and provides its own arguments. Yukos Capital begins by challenging the choice of law governing the Court's analysis of the validity of the Addenda.

## I. Choice of Law

There is no dispute that the Loan Agreements are subject to Russian law. The Court previously held that "Russian law will be applied to the question of the addenda's validity as it was the applicable to the loan agreements when the addenda were allegedly executed." (See Jan. 7, 2011 Tr. 23.) Yukos Capital moves for reconsideration of this ruling. It nonetheless concedes that the validity of the power of attorney is governed by Russian law. (See Yukos Opp. 21 n.12.)

Yukos Capital argues that, because it seeks to confirm its arbitration award under the New York Convention, incorporated through 9 U.S.C. § 207, New York law or Federal Common law govern such claims. (Yukos Opp. Br. 14-15.)[3] In Aramarine Brokerage, Inc. v. OneBeacon Ins. Co., 307 Fed. App'x 562, 565 (2d Cir. 2009), however, the Second Circuit found that a district court erred in not applying the choice of law provided for in the original contract when determining the validity of an oral modification to the original contract.[4] Similarly, here, determining the validity of the Addenda's modification of the choice of law provision should be governed by the choice of law specified in the original contract. Indeed, the New York Convention states that it will not apply where "said [arbitration] agreement is not valid under the

---

[3] Yukos Capital's opposition brief is also its brief in support of its cross-motion for summary judgment.
[4] The cases that Yukos Capital cites in support of its argument are inapposite or distinguishable because none of the cases hold that a *disputed* choice of law provision, in an agreement *modifying* the original contract, should be applied to determine the validity of the modification.

law to which the parties have subjected it. . . ."  Convention art. V(1).  Accordingly, Yukos

Capital's motion for reconsideration is denied.

## II.  The Validity of The Addenda

The English version of each Loan Agreement provides:  "All amendments and addenda

hereto shall be valid only if made in writing and signed and sealed by duly authorized

representatives of the parties."  (Samaraneftegaz 56.1 ¶ 19.)[5]

### A.  Godfrey's Authority to Sign the Addenda

It is undisputed that Grekhov signed and issued a power of attorney to Godfrey sometime

after October 26, 2005, and that the power of attorney bears the date July 26, 2005.  Under

Russian law, a power of attorney is a unilateral transaction.  Article 186(1)[6] provides:

> The period of effect of a power shall not exceed three years.  If the period
> is not indicated in the power, it shall remain in effect for one year from the
> date of its execution.
>
> *A power that does not indicate the date of its execution is void.*

Samaraneftegaz argues that the "date of execution" means the moment when the "the

principal performed the unilateral transaction of the power of attorney's issuance," or, in other

words, "the moment when the principal's will is expressed to create civil rights and obligations."

(Lomakin Report ¶ 8.)  Under Russian law, to "execute" means to "conclude, [or] formalize."

(Lomakin Report II ¶ 20 & n.22.)  Thus, Samaraneftegaz argues, under black letter Russian law,

since July 26, 2005 is not the date Grekov manifested his will to issue the power of attorney, the

power of attorney is void *ab initio*.  (Lomakin Report ¶¶ 9-10.)  Since the power of attorney was

---

[5]  Yukos Capital objects to the English translation of the Russian provision, which Samaraneftegaz claims
reads: "All amendments and addenda to this Agreement shall be valid only if made in writing and
signed and sealed by duly authorized representatives of the Parties."  (Samaraneftegaz 56.1 ¶ 19.)
[6]  All references to "Articles" refer to the Russian Civil Code.

void, Godfrey did not have the authority to sign the Addenda on Samaraneftegaz's behalf.

(Lomakin Report II ¶ 14.)

Yukos Capital argues that the discrepancy between the date Grekhov signed the power of attorney and the date listed does not invalidate the power of attorney, because: (1) while an execution date sets the term of effectiveness, an incorrect execution date does not void a power of attorney under Russian law; (2) Russian law allows for retroactive dating; (3) Samaraneftegaz's challenges the Addenda's validity are barred by the Russian statute of limitations; and (4) even if the power of attorney were invalid, by affixing its seal, Samaraneftegaz overrode any defect.

Yukos Capital first argues that the purpose of an execution date is to provide the date of "effectiveness," which is the "date as of which the principal intends to be bound by the power of attorney." (Gladyshev Report ¶ 36; Holiner Report ¶ 17.)[7]  The execution date is a crucial contract term under Russian law because it indicates from when, and for how long, the power of attorney is valid.[8]  While the statute mandates that a power of attorney contain an execution date, in "the over 200 reported cases on Article 186," there was not "a single example where a power was found to be invalid because the indicated date of execution did not match the actual date it was signed." (Holiner Report ¶ 16.)[9]

---

[7]  There is ample support for this argument.  For example, the rule appears in the "Duration of a power" section of the Rules, and not in the section discussing requirements as to form (Article 185).  (Holiner Report ¶ 13; see also Gladyshev Report ¶¶ 52, 53.)

[8]  As a judge of the Highest *Arbitrazh* Court stated: "An absence of an indication of the term of validity does not void a power of attorney:  In such cases its term of validity would be one year from the date it was issued.  Just this fact alone determines that the date of the issue of a power of attorney is a mandatory attribute – in its absence, the power of attorney would be void."  (Gladyshev Report ¶ 53.)

[9]  Yukos Capital also argues that it would be untenable for the Russian legal system to allow individuals to void a power of attorney merely by revealing (or claiming) after the fact that they signed the power of attorney on a different date than indicated.

The parties have cited only one Russian case on point, in which a power of attorney was dated three days before the notary provided the required certification inscription, which finalized the power of attorney.  (Lomakin Report ¶ 8 n.7.)  The Russian court ruling on the issue "considered [the power of attorney] valid only from the date of its certification by the notary, not the earlier date placed on the power of attorney by the principal."  (Lomakin Report II ¶ 21.)  By modifying the date of execution to reflect the later date—from which the term of effectiveness ran—the Russian court implicitly held that the principal did not have the ability to change the effectiveness date or retroactively date the power of attorney.  (Id.)  More importantly though, the Court held that an inaccurate execution date does not void a power of attorney.

The power of attorney here lists an execution date of July 26, 2005, which was not the date that Grekhov signed or formalized it the power of attorney.  Russian courts do not hold that a discrepancy between the execution date listed on a power of attorney, and the date formalize, voids a power of attorney.  The Court follows this Russian precedent and holds that the power of attorney here was valid.[10]

B. Abuse of Right

Under Article 10(1), "[a]ctions by citizens and legal person carried out solely with the intention of inflicting harm upon another person, as well as an abuse of right in any other form, shall not be permitted."  In other words, "[a] right is abused only when an authorized person acting within the limits of a subjective right it enjoys, and within the possibilities offered by such a right, exercises it in such form that the result is exceeding the limits for such exercise as established by the law."  (Lomakin Report n. 14.)  This statute provides courts with a discretionary remedy where one party's right "violates the law and has infringed on the rights or

---

[10]  There appears to be no need for the Court to modify the term of effectiveness, as Samaraneftegaz only challenges the validity and not the duration of the power of attorney.  Moreover, having found that the power of attorney is valid, the Court need not address Yukos Capital's remaining arguments.

lawful interests of other persons."  (Lomakin Report ¶ 18; <u>see</u> <u>also</u> Gladyshev Report Ex. 12,

Sect. 3.)

Samaraneftegaz argues that as a separate legal entity, it has the right to "exercise its own

interests and will separate from the interests and will of Yukos Oil."  (Samaraneftegaz Br. 21.)  It

argues that Godfrey abused this right by signing the Addenda, which benefited Yukos Capital

and Yukos Oil, and burdened Samaraneftegaz's ability to defend itself by subjecting it to

arbitration in a foreign forum, conducted in another language, and governed by a foreign law.

As a result of Godfrey's abuse of power, the Addenda should be found void under Article 168,

which provides that "[a] transaction, which does not comply with the requirements of law or

other legal acts, is void unless the law provides that such transaction is voidable or sets for other

consequences of its violation."  (Lomakin Report n.11.)

Yukos Capital argues that, pursuant to Article 105, a parent corporation has the authority

to direct a subsidiary's actions.  Accordingly, Samaraneftegaz did not have the unfettered right to

exercise its own interests separate and apart from Yukos Oil.  It also argues that Samaraneftegaz

would not have been harmed by being required to pay its debts, which would have prevented

arbitration anywhere.  In any event, Russian law expressly recognizes international arbitral fora;

and Article 421, discussed above, provides parties with discretion in determining contract terms.

Samaraneftegaz counters by noting that Article 105 does not preclude a court from

finding that an abuse of right has occurred in a parent-subsidiary context.  It also argues that

whether the parties could have contracted for arbitration in an international forum is beside the

point, because doing so here burdened Samaraneftegaz's right of defense.

Despite Samaraneftegaz's arguments, the factual evidence does not suggest that Godfrey,

in signing the Addenda, exercised the power of attorney "solely with the intention of inflicting

harm upon another person" or "in such form that the result is exceeding the limits for such exercise as established by the law."  (Article 10(1); Lomakin Report n. 14.)  Rather, the evidence shows that Grekhov would agree to change the arbitration provision to "US/UK" law and "to arbitration abroad," absent "criminal risks."  (Toweill Ex. V at 3.)  Knowing that Yukos Oil wanted to change the arbitration provision, Grekhov signed the power of attorney which explicitly authorized Godfrey to "[c]onclude (*amend*, supplement) on behalf of the Corporation *agreements* (arrangements, contracts) . . . ."  (Toweill Ex. LL (emphasis added).)   Relying on this power of attorney, Godfrey signed the Addenda, which amended the Loan Agreements.

Two Russian cases, which are summarized in the "Review of the Practical Application By Courts of Arbitrazh of Article 10," are particularly illuminating on this issue.  Case study number three involved a children's music school that was indebted to a municipality under a lease agreement, and the municipality instituted an action to (1) collect on its debt, (2) terminate the school's lease agreement, and (3) evict the school.  The Russian Court ordered the children's school to pay its debt, but found that it was an abuse of power for the municipality to then terminate the lease and evict the school because there were no suitable alternative locations for the school.  The Court's decision was upheld on appeal.  (<u>See</u> Gladyshev Report Ex. 12.)

Case study number five involved a shareholder action to invalidate an amendment to a company's articles of incorporation whereby general shareholder meetings could be held in venues outside the boundaries of the Russian Federation.  The shareholders based their suit on a Russian law that states general shareholders' meetings must be held in a location "where the company is located," unless otherwise provided by the articles of incorporation.  A Russian court of appeals held that the meaning of the federal statute indicated that general shareholders' meetings must be held in venues where the shareholders are able to participate in the meeting.

Since neither the company at issue, nor its shareholders conducted any activity in the foreign countries that were proposed as venue for the shareholders' meetings, the company's amendment would, in effect, prevent some shareholders (primarily individual citizens) from participating in meetings.  On this basis, the court found that making such an amendment constituted an abuse of right.

Here, there is no dispute that Samaraneftegaz borrowed from a subsidiary of its parent company, Yukos Oil, has not repaid any portion of the Loans, and now owes Yukos Capital RUR 2,415,890,000 plus interest.  (Yukos Capital 56.1 ¶¶ 1, 2.)  Samaraneftegaz has not, like the children's music school, paid its debts; it is not simply seeking a reprieve from any further right Yukos Capital may seek to enforce against it.  Additionally, Samaraneftegaz is not an individual shareholder which cannot afford to travel outside of Russia, but rather is an oil company, which entered into Loan Agreements with a subsidiary (Yukos Capital) of its parent company (Yukos Oil).  Moreover, Samaraneftegaz has not cited any Russian statute from which the Court can conclude that a New York forum would be inappropriate for arbitration between these two companies.  To the contrary, Russian law recognizes international arbitral fora.  Indeed, as discussed above, the evidence in this case suggests that Grekhov agreed to arbitrate in a foreign forum absent criminal risks to him as an individual.  Accordingly, the Court will not exercise its discretion to find an abuse of right in this case.

C.   Breach of Fiduciary Duty

Samaraneftegaz argues that Godfrey breached his fiduciary duty, owed under the power of attorney, because in executing the Addenda, he did not consider, in good faith, whether signing the Addenda was in Samaraneftegaz's best interests.  Instead, Godfrey executed the

Addenda either in his own or Yukos Oil's best interest, thereby acting under a conflict of interest.  The three provisions of Russian law at issue are:

- Article 182(2): Persons that act in the interests of others, but under their own name (commercial representatives, receivers, etc.) as well as person authorized to negotiate transactions possible in the future, are not representatives.

- Article 182(3): A representative cannot perform transactions in the name of the person represented in relation to himself personally.  He cannot enter into transactions with another person whom he at the same time represents, except for cases of commercial representation.

  - Article 184(1): A commercial representative is a person, which consistently and independently represents on behalf of entrepreneurs in the context of their execution of commercial contracts.

- Article 183:  In case of the absence of authority to act in the name of another person or in case of exceeding such authority a transaction shall be considered made in the name and in the interests of the person who made it unless the person (the represented person) later directly approves this transaction.

Samaraneftegaz argues that, by failing to consider whether executing the Addenda would be in Samaraneftegaz's best interests, Godfrey breached his fiduciary duty to represent Samaraneftegaz's interests in good faith.  For the reasons stated above, however, a parent corporation has the authority under Russian law to direct a subsidiary's actions.  (See Article 105.)  Samaraneftegaz thus had an interest in complying with Yukos Oil's directive to execute the Addenda.  Accordingly, Godfrey's execution of the Addenda was, at least in one important sense, in Samaraneftegaz's interest.  Indeed, the evidence suggests that Godfrey knew that Grekhov had intended to sign the Addenda, absent personal criminal risks, after being told to do so by Yukos Oil.

Samaraneftegaz also argues that Godfrey was under a conflict of interest because, on the one hand, he held positions in entities "in the chain of ownership of Yukos Capital" and received

compensation from one or more of those entities and, on the other hand, he was supposed to be representing Samaraneftegaz's interests.  Samaraneftegaz argues that because signing the Addenda burdened Samaraneftegaz's ability to defend itself, Godfrey must have been acting in his or Yukos Oil's interest.

Yukos Capital counters that the statutory bar against conflicts of interest, under Article 182(3), has been strictly limited by Russian courts to circumstances where the transaction is made "by one and the same representative," or, in other words, where there is "simultaneous representation of two parties to the transaction by one individual."  (Gladyshev Report Ex. 14 (Supreme Arbitrazh Court decision).)  For example, there is no violation where one attorney represents one party for one transaction, and also represents the opposing party in a different matter.  (Gladyshev Report Ex. 14 (Supreme Arbitrazh Court decision).)  Similarly, there is no violation where a company issues a loan to a 50% shareholder and director, because the company is acting as its own legal entity in the transaction and, therefore, the director only represents himself.  (Gladyshev Report Ex. 13 (Supreme Arbitrazh Court decision).)

In this case, Godfrey signed the Addenda on behalf of Samaraneftegaz, under the power of attorney, and TMF, the corporate manager of Yukos Capital, signed on behalf of Yukos Capital.  Samaraneftegaz has not shown that Godfrey had the authority, by virtue of his positions in the Yukos Oil organization, to sign the Addenda on behalf of Yukos Capital without a power of attorney in place—just as he needed a power of attorney to sign on behalf of Samaraneftegaz.  Moreover, Godfrey's indirect relationship to Yukos Capital is much more attenuated than the relationships detailed above in which the highest Russian court found did not violate Article 183(2).  Accordingly, Samaraneftegaz's arguments that Godfrey breached his fiduciary duty in signing the Addenda are without merit.

D.  <u>The Addenda's Execution</u>

Finally, Samaraneftegaz argues that the Addenda are void because their execution did not conform to provision 6.2 of the Loan Agreements.  The Loan Agreements were set forth in Russian and English, without specification as to which prevailed in the event of a conflict.  Samaraneftegaz claims that there is a conflict between the two provisions: the English version of section 6.2 requires that any amendments be "made in writing and signed and sealed by duly authorized representatives of the parties"; while the Russian version states that amendments be "made in writing and certified by signatures and seals of authorized representatives of the parties."  (Samaraneftegaz Br. 26-27.)  The English version mandates that the parties' authorized representatives sign the Addenda, and the contracting parties affix their seals.  The Russian version, however, mandates that the parties' authorized representatives sign the Addenda and affix their own seals, not the seals of the contracting parties.

Godfrey signed the Addenda on behalf of Samaraneftegaz, based on the power of attorney, and TMF signed on behalf of Yukos Capital, as its sole manager.  (Samaraneftegaz 56.1 ¶¶ 45-46, 66.)  TMF and Samaraneftegaz's seals were applied to the Addenda.  (Samaraneftegaz 56.1 ¶ 66; Yukos Capital 56.1 ¶ 19.)  In 2005, Samaraneftegaz had only two corporate seals; one was kept at the company's office and the other was kept by its management company, Yukos EP, which as its sole executive body was authorized to affix Samaraneftegaz's seal.  (Yukos Capital 56.1 ¶ 18.)  Yukos EP applied Samaraneftegaz's seal to the Addenda.  (Samaraneftegaz 56.1 ¶ 71.)

Samaraneftegaz argues that: (1) Samaraneftegaz's seal did not comply with the terms of the English version of section 6.2 because either: (a) Godfrey should have applied the seal to the Addenda, or (b) Grekhov should have applied the seal, because he was the only Yukos EP

employee authorized to do so; (2) Yukos Capital's seal, rather than TMF's seal, should have been affixed under the English translation of section 6.2; and (3) Yukos EP's seal, rather than Samaraneftegaz's seal, should have been affixed under the Russian translation of section 6.2. (Samaraneftegaz Br. 26-29.)  As a result of these deficiencies, Samaraneftegaz argues, the Addenda are invalid under section 6.2 of the Loan Agreements.

With respect to Yukos Capital's seal, the Russian translation of section 6.2 permits TMF, as an authorized representative, to sign the Addenda on behalf of Yukos Capital, and affix its own seal.  Since the parties agreed to both translations of the Loan Agreements, and Yukos Capital's conduct conforms to one—the Russian version—the Court rejects Samaraneftegaz's argument that Yukos Capital's signature and seal invalidates the Addenda.

With respect to Samaraneftegaz, since the power of attorney was valid, Godfrey was authorized to sign the Addenda on behalf of Samaraneftegaz.  Individuals, such as Godfrey, do not have (or use) their own seals.  (See Holiner Report ¶ 39.)  Accordingly, the seal of Samaraneftegaz, the contracting party, was affixed.  This signature and seal combination comports with the English version of section 6.2 of the Loan Agreements.  Samaraneftegaz argues, however, that because Grekhov, as President of Yukos EP, did not grant a power of attorney to a Yukos EP employee to affix the seal, the seal was not affixed by a duly authorized representative.  Samaraneftegaz's argument adds another requirement to the agreement—i.e., that only an authorized employee of the duly authorized representative of the contracting party has the authority to affix the seal.  This proposition contradicts Yukos EP's normal practice, which is to have a particular operations manager at Yukos EP hold Samaraneftegaz's seal, and when presented with a document, to "assure[ ] the signature of Grekhov and place the seal."

(Coyle Decl., Ex. 2, 108:2-7.)[11]  Given the language of section 6.2, the fact that

Samaraneftegaz's signature and seal comply with the English version, and the evidence of Yukos

EP's general practice in affixing seals, Samaraneftegaz's arguments that its seal was not properly

affixed are without merit.

    E.  <u>Conclusion</u>

      Grekhov signed the power of attorney permitting Godfrey to make amendments to

agreements; and did so after learning that Yukos Oil wanted to change both the arbitration forum

and governing law for the Loan Agreements.  While Samaraneftegaz now raises hypertechnical

arguments about the validity of the power of attorney and the signatures and sealing of the

Addenda, Russian case law does not support its claims.[12]  Having found all of Samaraneftegaz's

arguments to be without merit, the Court finds that the power of attorney and the Addenda are

valid, and thus the Court has personal jurisdiction over Samaraneftegaz in this action.

Accordingly, Samaraneftegaz's motion for summary judgment is denied, and Yukos Capital's

motion is granted.

**III.  Confidentiality Designations**

      The parties have a confidentiality order (<u>see</u> Dkt. No. 54), which provides that non-public

information relating to, <u>inter alia</u>, trade secrets, business plans and strategies, and personal

information can be designated confidential.  Samaraneftegaz objects to Yukos Capital's

designation of certain materials as confidential, and seeks an order from the Court that (a) such

materials are no longer to be treated as "Confidential Discovery Material" under the Protective

---

[11]  Indeed, there is testimony that, with respect to the power of attorney, after Grekhov signed the document he told Mkhitaryan, to "go and get it sealed," indicating Grekhov understood that he would not affix the seal himself.  (<u>Id.</u> at 107:19-25.)

[12] Russian law does not provide, or even suggest, that a borrower can ignore its obligation to repay debts under a loan agreement.

Order, and (b) that such materials are to be unsealed.  Yukos Capital similarly moves to remove

confidentiality designations from Peter O'Brien's deposition, as designated by Samaraneftegaz.

A. <u>Legal Standard</u>

"Where . . . the [discovery is] relevant, the burden is upon the party seeking non-

disclosure or a protective order to show good cause."  <u>Dove v. Atl. Capital Corp.</u>, 963 F.2d 15,

19 (2d Cir. 1992) (quoting <u>Penthouse Int'l, Ltd. v. Playboy Enters.</u>, 663 F.2d 371, 391 (2d Cir.

1981)).  "[D]ocuments submitted to a court for its consideration in a summary judgment motion

are-as a matter of law-judicial documents to which a strong presumption of access attaches,

under both the common law and the First Amendment."  <u>Lugosch v. Pyramid Co. of Onondaga</u>,

435 F.3d 110, 121 (2d Cir. 2006).  Such documents "should not remain under seal absent the

most compelling reasons."  <u>Id.</u> (quoting <u>Joy v. North</u>, 692 F.2d 880, 893 (2d Cir. 1982)).

If the documents relate to an "affirmative defense in the instant action [that] was

interposed for the sole purpose of obtaining information through discovery for use in [a foreign]

litigation, [the Court] would [ ] be [ ] justified in issuing the protective order."  <u>Dove</u>, 963 F.2d at

19.  "However, where the discovery sought is relevant to a good faith defense in the federal case,

the mere fact that it may be used in other litigation does not mandate a protective order."  <u>Id.</u>

B. <u>Samaraneftegaz's Motion</u>

Samaraneftegaz seeks to remove confidentiality designations over the following

categories of material (hereinafter, the "Designated Materials"):

- Contractual documents showing the terms of the Addenda and materially identical
  amendments to parallel agreements (including Tomskneft's) signed at the same
  time;

- Documents and testimony showing that Yukos Capital and Yukos Oil considered
  Samaraneftegaz and Tomskneft in default under the Loan Agreements before the
  senior management of Yukos Oil decided to cause the Loan Agreements to be
  amended to facilitate making claims for default;

- Documents and testimony showing that the senior management of Yukos Oil decided to have the Loan Agreements amended without regard to the interests of Samaraneftegaz (or Tomskneft) and in the face of the repeated and consistent refusal to sign on behalf of Samaraneftgaz and Tomskneft by Mr. Grekhov president of the management company for Samaraneftegaz and Tomskneft;

- Documents and testimony showing the backdating of Powers of Attorney; and

- Documents showing that the Addenda did not meet the requirements that they be signed and sealed by authorized representatives.[13]

Yukos Capital opposes the motion, arguing that its confidentiality designations are in place to protect Yukos employees from being harassed by the Russian government, given the record of previous harassment.  Yukos Capital also argues that Samaraneftegaz obtained such discovery in bad faith because: (a) the Court approved taking discovery on the validity of the Addenda based on Grekhov's perjured affidavit; and (b) Samaraneftegaz took discovery on issues well beyond what is relevant to the Addenda's validity.  In particular, Yukos Capital takes issue with Samaraneftegaz's requests for information concerning Yukos Capital's corporate structure and its internal business decision relating to Tomskneft, Samaraneftegaz's sister company.

The Court acknowledges Yukos Capital's claim that the Russian state has harassed individuals tied to the Yukos organization, but Yukos Capital fails to show how Samaraneftegaz's narrowly tailored removal of confidentiality designations would further any such harassment.  For example, Yukos Capital's arguments make clear that the Russian state already knows the identity and role of many of the individuals involved in drafting and executing the Addenda.   Barring one small section of testimony, the narrowly tailored removal of confidentiality designations do not contain any personal information about these individuals.

---

[13] While the Designated Materials may not support Samaraneftegaz's arguments, Samaraneftegaz's characterization of these materials conveys their general nature and the way in which Samaraneftegaz used these materials in its motion papers.

The one exception is Godfrey's testimony concerning his job titles, and the companies from which he receives compensation, which Samaraneftegaz used in making its conflict of interest arguments, discussed above.  This information is not comparable to the type of personal information (medical files, criminal records, etc.) typically subject to a protection order.  See e.g., Duling v. Gristede's Operating Corp., 266 F.R.D. 66, 74 (S.D.N.Y. 2010).

Moreover, all of the Designated Materials directly relate to arguments raised in Samaraneftegaz's summary judgment motion.  Accordingly, Yukos Capital's argument about a bad faith fishing expedition is without merit (at least with respect to the Designated Materials).  Almost all of the information relating to Tomskneft in the Designated Material also relates to Samaraneftegaz.  Since the Designated Materials relate to arguments Samaraneftegaz made in its own defense, "the mere fact that it may be used in other litigation does not mandate a protective order."  Dove, 963 F.2d at 19.  Accordingly, Samaraneftegaz's motion to remove the confidentiality designations over the Designated Materials is granted.

C.  Yukos Capital's Motion

Yukos Capital seeks to remove the confidentiality designations from Peter O'Brien's deposition testimony.  Mr. O'Brien worked for Rosneft when it acquired Samaraneftegaz in May 2007, and confirmed that Rosneft's 2007 consolidated financial statements reference its liability to Yukos Capital.  Samaraneftegaz claims to have designated such materials as confidential because Mr. O'Brien's testimony concerns non-public business information, and Mr. O'Brien has confidentiality obligations to Rosneft.  Moreover, Samaraneftegaz argues that such testimony is irrelevant to the validity of the Addenda.

Relevance is a threshold issue.  See Dove, 963 F.2d at 19 ("*Where . . . the [discovery is] relevant*, the burden is upon the party seeking non-disclosure or a protective order to show good

cause." (emphasis added)).  Rosneft became Samaraneftegaz's parent company in 2007, one and a half years after the Addenda were executed.  Rosneft's state of mind regarding its liability under the Loan Agreements is completely irrelevant to the validity of the Addenda.  Having failed to make this threshold showing of relevance, Yukos Capital's motion is denied.

## CONCLUSION

The Court finds that it has personal jurisdiction over Samaraneftegaz.  Accordingly, the Court DENIES Samraneftegaz's motion for summary judgment; and GRANTS Yukos Capital's motion for summary judgment.  The Court GRANTS Samaraneftegaz's motion to remove confidentiality designations; and DENIES Yukos Capital's motion to remove confidentiality designations.

The Clerk of Court is directed to terminate these motions (Dkt. Nos. 61, 65, 69, 75.)

Dated:  New York, New York
      July 24, 2012

SO ORDERED

PAUL A. CROTTY
United States District Judge

21