USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 9, 2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
YUKOS CAPITAL S.A.R.L.                          :
                                                :
            Petitioner,                         :
                                                :     10 Civ. 6147 (PAC)
   -against-                                   :     OPINION & ORDER
                                                :
OAO SAMARANEFTEGAZ,                             :
                                                :
            Respondent.                         :
------------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      Having prevailed in an arbitration proceeding before the International Court of Arbitration of the International Chamber of Commerce in New York ("ICC") under New York law, and thereafter having sought enforcement of the award in which the Court determined that it had *in personam* jurisdiction,[1] confirmed the award,[2] and entered final judgment in the amount of $185,907,785.41 (the "Judgment"),[3] Petitioner Yukos Capital S.A.R.L. ("Yukos Capital") seeks an order compelling Respondent OAO Samaraneftegaz ("Samaraneftegaz") to turnover assets to satisfy the judgment and to restrain the transfer of assets to its shareholder or corporate affiliates. The motion is GRANTED.

## BACKGROUND

**I.    Facts**

      The Court assumes familiarity with the facts and the Court's prior decisions in this matter. For convenience, however, the relevant facts are set forth below.

---

[1] *See Yukos Capital S.a.r.l. v. OAO Samaraneftegaz*, No. 10 Civ. 6147, 2012 WL 3055863, at *9 (S.D.N.Y. July 24, 2012) ("*Yukos Capital I*").
[2] *See Yukos Capital S.a.r.l. v. OAO Samaraneftegaz*, No. 10 Civ. 6147, 2013 WL 4001584, at *9 (S.D.N.Y. Aug. 6, 2013) ("*Yukos Capital II*").
[3] (*See* Supplemental Final Judgment, ECF No. 144.) Samaraneftegaz has appealed to the Second Circuit.

1

Yukos Capital is a Luxembourg-based subsidiary of Yukos Oil Company ("Yukos Oil"). (Yukos Capital 56.1 ¶ 1, ECF No. 111.) From 2001 to May 2007, Samaraneftegaz was also a wholly-owned subsidiary of Yukos Oil. (*Id.* ¶ 5.) Samaraneftegaz is now a subsidiary of OJSC Oil Company Rosneft ("Rosneft"), a Russian state-controlled oil company, and LLC Neft-Aktiv ("Neft-Aktiv") is Samaraneftegaz's sole shareholder. (*Id.* ¶ 11.) Samaraneftegaz does not have assets or do business within the United States. (*See* Declaration of Robert L. Weigel, ECF No. 150 ("Weigel Decl."), Ex. C ¶ 2.) In July 2004, Samaraneftegaz and Yukos Capital executed two loan agreements in which Yukos Capital extended a total of RUR 2,415,890,000 to Samaraneftegaz (the "Loan Agreements"). (Yukos Capital 56.1 ¶ 12, ECF No. 111.) The Loan Agreements provided for arbitration of disputes in Russia under Russian law. In November 2005, Addenda to the Loan Agreements were executed that instead provided for arbitration before the ICC in New York under New York law (the "Addenda"). (*Id.* ¶ 17.)

On January 12, 2006, Yukos Capital requested arbitration at the ICC in New York to resolve the dispute over the outstanding loans. (*Id.* ¶ 23.) Samaraneftegaz asserted that it had not agreed to ICC arbitration in the United States. (*Id.* ¶¶ 31, 38.) In its August 15, 2007 award, the tribunal ordered Samaraneftegaz to pay Yukos Capital the outstanding money due under the Loans, in addition to interest and Yukos Capital's fees and expenses (the "Award"). (*Id.* ¶ 58.) Yukos Capital sought enforcement of the Award in the Arbitrazh court in the Samara region of Russia on August 9, 2010. (Samaraneftegaz 56.1 ¶ 2, ECF No. 108.) In its ruling issued on February 22, 2011 (the "Russian Enforcement Decision"), the court refused to enforce the Award on the grounds that "Samaraneftegaz was not given notice of the important stages of the progress of the [arbitration]" and that doing so would violate Russian public policy. (Declaration of Catherine L. Carlisle, ECF No. 107 ("Carlisle Decl."), Ex. A at 5, 7.)

2

In a separate Russian proceeding, Neft-Aktiv sued Samaraneftegaz and Yukos Capital to invalidate the Loan Agreements.  (Samaraneftegaz 56.1 ¶ 8, ECF No. 108.)  Yukos Capital participated in the case.  (*Id.* ¶ 9.)  On February 8, 2012, the Russian court invalidated the Loan Agreements (the "Neft-Aktiv Decision").  (*Id.* ¶¶ 8, 10.)  Specifically, the court determined that "the loans advanced by Yukos Capital S.a.r.l. were financed from funds taken away earlier from OJSC Samaraneftegaz in the course of implementation of transfer pricing mechanisms."  (*Id.* ¶ 11(d).)  Yukos Capital appealed this decision to the Russian appellate court, which affirmed the trial court's judgment on July 20, 2012.  (*Id.* ¶ 12.)

## **DISCUSSION**

Yukos Capital moves for an order that Samaraneftegaz (1) turnover assets to pay the full amount of the Judgment; and (2) be restrained from paying dividends, making loans, or otherwise making further payments to its shareholder or other corporate affiliates, until Samaraneftegaz either satisfies the Judgment or posts a bond pending appeal.  (*See* Yukos Capital's Memorandum of Law in Support of Motion for Turnover, ECF No. 149 ("Yukos's Mot.") at 2).  Samaraneftegaz argues that Yukos Capital is not entitled to either forms of relief and, in the alternative, the motion should be stayed until the appeal is decided.  (*See* OAO Samaraneftegaz's Opposition to Yukos Capital's Motion for Turnover, ECF No. 154 ("Samaraneftegaz's Opp'n") at 1-3).  The Court holds that Yukos Capital is entitled to a turnover order and a restraining order prohibiting Samaraneftegaz from transferring its assets to its shareholder or corporate affiliates.

I.  **Yukos Capital Is Entitled to a Turnover Order**

New York law governs turnover proceedings, *see* Fed. R. Civ. P. 69(a)(1), and provides that "[u]pon motion of the judgment creditor, upon notice to the judgment debtor . . . the court

shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment." N.Y. C.P.L.R. 5225(a). Under Section 5225(a), "a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property." *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 541 (2009); *see Gryphon Dom. VI, LLC v. APP Int'l Fin. Co., B.V.*, 836, N.Y.S.2d 4, 13 (1st Dep't 2007). Courts require defendants to turnover out-of-state assets even where personal jurisdiction was obtained only on the basis of an agreement to arbitrate in New York. *See, e.g.*, *CIMC Raffles Offshore (Sing.) Pte. Ltd. v. Schahin Holding S.A.*, No. 13 Civ. 52, 2013 WL 4082973, at *1 (S.D.N.Y. Aug. 6, 2013).

Here, this Court previously held that it had *in personam* jurisdiction over Samaraneftegaz pursuant to the valid arbitration agreement between the parties. *See Yukos I*, 2012 WL 3055863, at *9; *see also Union Fire Ins. Co. v. Diaz Constr. Co., Inc.*, No. 12 Civ. 973, 2013 WL 1234840, at *2 (S.D.N.Y. March 25, 2013) (discussing the "long line of cases holding that agreement to arbitrate in New York constitutes consent to personal jurisdiction"). The Court then confirmed the Award, and entered judgment against Samaraneftegaz. *See Yukos II*, 2013 WL 4001584, at *9; Supplemental Final Judgment, ECF No. 144. Since Samaraneftegaz possesses no U.S. assets, (*see* Weigel Decl., Ex. C ¶ 2), Yukos Capital is entitled to a turnover order for Samaraneftegaz's out-of-state assets in order to satisfy the Judgment. *See CIMC Raffles Offshore (Sing.) Pte. Ltd.*, 2013 WL 4082973, at *1.

**II.     Yukos Capital Is Entitled to a Restraining Order or Injunctive Relief**

Yukos Capital seeks an order restraining Samaraneftegaz from transferring assets to Neft-Aktiv or its corporate affiliates until it has complied with the Court's Judgment. Section 5222 permits a court to order a judgment debtor to not transfer any property in which it has an interest and courts routinely do so when those transfers constitute fraudulent conveyances. *See, e.g.*,

4

*Interpool Ltd. v. Patterson*, No. 89 Civ. 8501, 1995 WL 105284, at *1 (S.D.N.Y. Mar. 13, 1995). A transfer is fraudulent when: "(1) the conveyance was made without fair consideration; (2) the conveyor is a defendant in an action for money damages or a judgment in such action has been docketed against him; and (3) the defendant has failed to satisfy the judgment." *Dixie Yarns, Inc. v. Forman*, 906 F. Supp. 929, 935 (S.D.N.Y. 1995) (discussing New York Debtor and Creditor Law § 273-a). There is no dispute that Samaraneftegaz has a judgment against it and that it has not satisfied that judgment. As a result, whether Yukos Capital is entitled to a restraining order depends on whether the transfers constitute conveyances for fair consideration.

As a matter of law, the transfers to Samaraneftegaz's shareholder or corporate affiliates are not made for fair consideration. According to New York law, "preferences to a debtor corporation's shareholders, officers, or directors are deemed not to be transfers for fair consideration." *See Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 86 (2d Cir. 1996) (internal quotations and citations omitted)). Samaraneftegaz paid more than $770 million in dividends to Neft-Aktiv in 2012 and $440 million in 2011. *See* Weigel Decl., Ex. B at 55. Furthermore, in 2011, Samaraneftegaz recorded interest-free loans to its corporate affiliates totaling over $525 million. *See id.*, Ex. B at 33. As a result of these sizable transfers, Samaraneftegaz's cash position was only $20,000 as of December 31, 2012. *See id.*, Ex. B at 35. It is therefore appropriate and necessary for this Court to restrain Samaraneftegaz from further depleting its holdings until it has paid the Judgment in full.

Additionally, Yukos Capital is entitled to injunctive relief pursuant to Federal Rule of Civil Procedure 65. A party seeking a permanent injunction must demonstrate "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate . . .; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

5

warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 733 F.3d 393, 422-23 (2d Cir. 2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010)). Each of these factors is satisfied here.

Yukos Capital will both suffer irreparable harm and have no adequate remedy at law if Samaraneftegaz is permitted to make distributions to its shareholder. Both requirements are satisfied when a judgment debtor transfers funds to frustrate a judgment. *See NML Capital, Ltd. v. Republic of Arg.*, 699 F.3d 246, 262 (2012) ("Insofar as Argentina argues that a party's persistent efforts to frustrate the collection of money judgments cannot suffice to establish the inadequacy of a monetary relief, the law is to the contrary."); *Pashaian*, 88 F.3d at 86-87 ("[T]he irreparable harm requirement is satisfied in this case, which involves completed actions to frustrate a judgment, rather than an inferred intention to take future such actions."). Samaraneftegaz has consistently acted to avoid payment since the Award was issued in 2007, most recently by refusing to pay the Judgment issued months ago by this Court. At the same time, Samaraneftegaz transferred millions to its shareholder and affiliated entities. Even if these payments were not for the *purpose* of frustrating Yukos Capital's ability to collect on the judgment, they had the *effect* of doing so by substantially depleting Samaraneftegaz's available assets. As a result, the first and second requirements for an injunction are satisfied.

The remaining two factors also support issuing injunctive relief. Yukos Capital has repeatedly sought payment under the Loan Agreements since 2007, and the Court has issued a valid Judgment in its favor. If injunctive relief is not granted, Yukos Capital may never see that Judgment satisfied. Any hardship on Samaraneftegaz, however, is minimal. To continue making loans to its affiliates or dividend payments to its shareholder, Samaraneftegaz can either

post a bond or pay the Judgment.  The equities therefore favor an injunction.  Furthermore, the public interest is satisfied where, as here, the Court is acting to ensure the enforcement of a validly obtained judgment.  *See State Farm Mut. Auto Ins. Co. v. Am. Rehab and Physical Therapy, Inc.*, 376 Fed. Appx. 182, 184 (3d Cir. 2010) (slip op.) ("The public has an interest in the enforcement of judgments.").

Accordingly, the Court holds that Yukos Capital is entitled to a restraining order or injunctive relief to prevent Samaraneftegaz from paying dividends, making loans, or otherwise making further payments to its shareholder or other corporate affiliates, until Samaraneftegaz either satisfies the Judgment or posts a bond pending appeal.

### III.     Samaraneftegaz Is Not Entitled to a Stay Pending the Second Circuit's Decision

Samaraneftegaz asks this Court to refrain from ordering relief until the Second Circuit decides its appeal.  (*See* Samaraneftegaz's Opp'n at 20-24.)  "Whether to grant a stay without a supersedeas bond is a matter that remains within this Court's sound discretion."  *Marcoux v. Farm Serv. And Supplies, Inc.*, 290 F. Supp. 2d 457, 485 (S.D.N.Y. 2003).  In making this determination, "'a court must consider (1) whether the petitioner is likely to prevail on the merits of his appeal, (2) whether, without a stay, the petitioner will be irreparably injured, (3) whether issuance of a stay will substantially harm other parties interested in the proceedings, and (4) wherein lies the public interest.'"  *Id.* (quoting *De la Fuente v. DCI Telecomms., Inc.*, 269 F. Supp. 2d 237, 240 (S.D.N.Y. 2003)).  First, the Court has no reason to believe that Samaraneftegaz will prevail on its appeal.  Second, Samaraneftegaz offers no basis for irreparable harm besides the possibility that Yukos Capital will distribute all funds before the Second Circuit issues a decision.  But this is always a risk while awaiting a decision on appeal, and Samaraneftegaz can eliminate that risk by simply posting a bond.  Third, granting a stay

would prejudice Yukos Capital's interests in receiving payment on an arbitral award that was made over seven years ago. Fourth, the public interest is better served by execution of a judgment, than by a stay pending an appeal of dubious merit. *See Farm Mut. Auto Ins. Co.*, 376 Fed. Appx. at 184. As a result, this Court declines to stay the issue pending resolution of Samaraneftegaz's appeal.

## IV. Samaraneftegaz's Objections

Notwithstanding the foregoing conclusion that a court with *in personam* jurisdiction has authority to enforce its own judgment, Samaraneftegaz parades a list of horribles that stop the relief to which Yukos Capital is entitled:

- A turnover order would offend principles of comity because it would expose Samaraneftegaz's officers to criminal liability for aiding and abetting the same illegal scheme the Russian courts found that the Loan Agreements were intended to further. (*See* Samaraneftegaz's Opp'n at 6-7).

- A turnover order would conflict with the Russian Enforcement Decision and Neft-Aktiv Decision and therefore should not be issued out of respect for the Russian courts' judgments in Russian territory. (*See* Samaraneftegaz's Opp'n at 8-10.)

- A turnover order would offend principles of comity because Russia has a stronger connection to the Loan Agreements than the United States. (*See* Samaraneftegaz's Opp'n at 10-11.)

- A turnover order would conflict with the United Nations Convention on the Recognition and Enforcement of Arbitral Awards, June 10, 1958, 330 U.N.T.S. 38. (*See* Samaraneftegaz's Opp'n at 11-14.)

- A turnover order is inappropriate because Yukos Capital failed to properly serve Samaraneftegaz pursuant to N.Y. C.P.L.R. § 5225.  (*See* Samaraneftegaz's Opp'n at 14-15.)

- A turnover order is inappropriate because Yukos Capital failed to specifically identify any money or personal property for turnover.  (*See* Samaraneftegaz's Opp'n at 15-16.)

- A restraining order is inappropriate because Russian law governs the question of fraudulent transfers.  (*See* Samaraneftegaz's Opp'n at 18 n.6.)

- Injunctive relief is inappropriate because it would offend notions of comity and thus disserve the public interest.  (*See* Samaraneftegaz's Opp'n at 19-20.)

As to these objections, Samaraneftegaz merely recycles its prior arguments in a transparent attempt to escape paying the Judgment.  *See Yukos II*, 2013 WL 4001584, at *4-8 (rejecting Samaraneftegaz's claims that the Russian judgments should be recognized due to collateral estoppel and comity, and that enforcement of the Award would violate public policy); *see also* Order, ECF No. 50, at 2 (declining to dismiss the case on *forum non conveniens* grounds and holding that "this Court is an adequate forum for this action").  Samaraneftegaz cannot relitigate these issues after a valid judgment has been entered against it.  In addition to being repetitive, Samaraneftegaz's arguments are also strained and entirely unsubstantiated.  The Court rejects Samaraneftegaz's claims and holds that Yukos Capital is entitled to the requested relief.

## CONCLUSION

Accordingly, the Court GRANTS Yukos Capital's motion for turnover.  The Court orders Samaraneftegaz to either post a bond pending the resolution of its appeal or turnover assets to pay the full amount of the Judgment.  The Court also enjoins and restrains Samaraneftegaz from

paying dividends, making loans, or otherwise making further payments to its shareholder or other corporate affiliates, until Samaraneftegaz either satisfies the Judgment or posts a bond pending appeal. Yukos Capital is directed to submit an order on the motion in 5 days for the Court's signature.

Dated: New York, New York
January 9, 2014

SO ORDERED

*/s/ Paul A. Crotty*

PAUL A. CROTTY
United States District Judge